**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | | |
|---|---|---|
| **JENNIFER COLE,** | * | |
| **Plaintiff,** | * | |
| v. | | **Case No.: GJH-15-3960** |
| | * | |
| **FEDERAL NATIONAL MORTGAGE** | | |
| **ASSOCIATION,** *et al.,* | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Plaintiff Jennifer Cole brings this action *pro se* against Defendants Federal National

Mortgage Association a.k.a. Fannie Mae ("Fannie Mae" or "FNMA") and Seterus, Inc.

("Seterus") (collectively, Defendants) under the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*

("TILA"), Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq.* ("RESPA"), the

Maryland Consumer Debt Collection Act, Md. Code Com. Law § 14-201 *et seq.* ("MCDCA"),

the Maryland Consumer Protection Act, Md. Code Com. Law § 13-301 *et seq.* ("MCPA"), and

the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"). Presently pending before the

Court is Defendants' Motion to Dismiss for Failure to State a Claim, ECF No. 21, and Plaintiff's

Cross Motion for Summary Judgment, ECF No. 25. No hearing is necessary. *See* Loc. R. 105.6.

For the reasons stated below, Defendants' Motion to Dismiss is denied, in part, and granted, in

part, and Plaintiff's Cross Motion for Summary Judgment is also denied.

## I.    BACKGROUND

Jennifer Cole is the record owner and resident of the property located at 12601 King

Arthur Court, Glenn Dale, Maryland 20769 ("the Property"). *See* ECF No. 17 at 1–2.[1] Plaintiff is

also the sole mortgagor of the mortgage loan (the "Loan" or "Mortgage Loan") secured by the

Property. *Id.* at 2. Defendant Fannie Mae is the current owner of the Mortgage Loan. *Id.* ¶ 11.

Defendant Seterus is "a loan servicer specializing in servicing defaulted mortgage debts" and is

the current servicer of the Mortgage Loan. *Id.* ¶¶ 4, 8.

On or about November 8, 2007, Jennifer and Darryl Cole obtained the Mortgage Loan on

the Property from non-party Bank of America, N.A.[2] *Id.* ¶ 5. The Loan was evidenced by a

promissory note (the "Note") secured by a Deed of Trust (the "Deed of Trust"). *Id.* ¶ 6. Darryl

Cole passed away in October of 2013 and Ms. Cole became the sole mortgagor. *Id.* ¶ 9. Seterus

declared the Loan in default on February 1, 2014. *Id.* ¶ 10. Seterus mailed Ms. Cole a Notice of

Intent to Foreclose in November 2014, which stated, *inter alia*, that Fannie Mae was the current

secured party for the Loan. *Id.* ¶ 11. The Loan defaulted and the total amount required to cure the

default was $15,034.09. *Id.*

Ms. Cole arranged to obtain a personal loan from a private lender in order to pay the

arrears amount of $15,034.09. *Id.* ¶ 12. The private lender requested certain documents from Ms.

Cole, including her mortgage statements and a history of loan payments, as a condition to

providing her the requested loan. *Id.* ¶ 13. Ms. Cole was unable to provide these documents

because "Seterus does not send monthly mortgage statements." *Id.* ¶¶ 14, 71. Plaintiff sent a

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[2] The Amended Complaint alleges that the Coles obtained the loan from non-party Countrywide Bank, FSB, and that the loan was later acquired by Bank of America, N.A. ECF No. 17 ¶¶ 5, 7. Defendants attach the Deed of Trust, of which the Court takes judicial notice, which states that the loan originated with Bank of America, N.A. ECF No. 21-5 at 2.

letter to Seterus dated December 12, 2014 ("First Letter") requesting proof that Seterus was in possession of the original Note. *Id.* ¶ 15. Ms. Cole also requested that Seterus stop assessing interest and fees while she was waiting for a copy of the original Note. *Id.* ¶ 15.

Seterus "did not send a letter acknowledging receipt of Ms. Cole's December 12, 2014 letter," *id.* ¶ 16, but responded to Ms. Cole on December 29, 2014 and December 31, 2014 by sending a "payoff statement" and "reinstatement quotes," respectively. *Id.* ¶ 17. On January 12, 2015, Seterus sent Ms. Cole an uncertified copy of the Note and an Assignment of the Deed of Trust purporting to transfer the Deed of Trust from Countrywide Home Loans to Fannie Mae. *Id.* ¶ 19. Ms. Cole contends that prior to this letter dated January 12, 2015, she had not been notified that Fannie Mae held an interest in the Deed of Trust. *Id.* ¶ 20. Ms. Cole sent a second letter dated January 22, 2015 ("Second Letter") in which she complained that Seterus had not provided her a certified copy of the Note. *Id.* ¶ 21. Seterus "did not send a letter acknowledging receipt of Ms. Cole's January 22, 2015 letter," *id.* ¶ 22, but sent a certified copy of the Note back to Ms. Cole on February 18, 2015. *Id.* ¶ 25.[3]

In a letter dated February 9, 2015, Seterus sent Ms. Cole reinstatement quotes that assessed foreclosure sale costs and attorney's fees against her. *Id.* ¶ 24. Ms. Cole also viewed her Equifax credit report on February 2, 2015 and saw that Seterus was reporting her as "delinquent" on her mortgage. *Id.* ¶ 23. After Ms. Cole received the certified copy of the Note, she sent another letter on March 5, 2015 ("Fourth Letter") offering to cure the default, but requested that Seterus remove all interest and fees that had accrued while she was waiting for the certified copy of the Note. *Id.* ¶ 30. She also requested to physically inspect the Note. *Id.* Seterus "did not send a letter to acknowledge receipt of Ms. Cole's letter dated March 5th 2015," *id.* ¶ 33, but advised

---

[3] While waiting for the certified copy of the Note, Plaintiff sent a letter dated February 18, 2015 ("Third Letter").

Ms. Cole on April 1, 2015 that she could view the wet-ink original of the Note at the BWW Law Group, LLC. *Id.* ¶ 36.

Ms. Cole alleges that on March 13, 2015, Seterus disclosed to her for the first time that Fannie Mae was the "owner of the Loan." *Id.* ¶¶ 31–32. Plaintiff contends that "[e]ither FNMA just became the owner of the Note in March 2015 or FNMA concealed this information from the Plaintiff." *Id.* ¶ 32. Seterus's correspondence did not address Ms. Cole's request to remove the interest and fees or explain the foreclosure costs or attorney's fees. *Id.* ¶ 34.

On multiple occasions throughout 2015, Ms. Cole observed that she was continuing to be reported as delinquent on her mortgage payments to various credit reporting agencies. *Id.* at 6–10. Ms. Cole sent several letters to Seterus disputing the payoff amounts, but Seterus did not designate her account as "disputed" with the credit reporting agencies. *Id.*[4] Ms. Cole continued to dispute the amounts asserted in reinstatement quotes sent by Seterus. *Id.* ¶ 50. Ms. Cole also claims that Fannie Mae and Seterus assessed "excessive and inflated charges" on Plaintiff's account, based on "customary charges" for title fees, filing costs, and attorney's fees. *Id.* ¶ 54. Ms. Cole further alleges that while Seterus explained the calculation of some of the balance of the Loan, it did not respond to her multiple requests as to how the "corporate advance amount" was assessed. *Id.* ¶ 53, 57.

In February 2016, Ms. Cole inquired with a third party about a personal loan for her mortgage payments. *Id.* ¶ 61. However, the third party declined to provide her the loan because her mortgage records were not "accurate or sufficient to determine what amount was required to cover the mortgage and any arrears." *Id.* ¶¶ 61, 62. Ms. Cole alleges that she incurred fees paying the third party to obtain information on the amount due. *Id.* ¶ 66.

---

[4] According to Plaintiff's First Amended Complaint, she sent letters to Seterus dated August 17, 2015 ("Fifth Letter"), October 7, 2015 ("Sixth Letter"), November 8, 2015 ("Seventh Letter"), November 28, 2015 ("Eighth Letter"), and February 24, 2016 ("Ninth Letter").

Ms. Cole filed her initial Complaint in the Circuit Court for Prince George's County on November 4, 2015. ECF No. 2. Defendants removed the action to this Court on December 28, 2015. ECF No. 1. Plaintiff filed an Amended Complaint on February 26, 2016. ECF No. 17. Defendants filed their Motion to Dismiss for Failure to State a Claim on March 28, 2016. ECF No. 21. Plaintiff filed a Response in Opposition and Cross Motion for Summary Judgment on May 5, 2016. ECF No. 25. Defendants filed a Reply and Opposition to Plaintiff's Cross Motion for Summary Judgment on May 19, 2016. ECF No. 26. Plaintiff filed a Reply to Defendant's Opposition on June 6, 2016. ECF No. 27.

## II.    STANDARD OF REVIEW

### A.  12(b)(6) Motion to Dismiss

"A defendant may test the adequacy of a complaint by way of a motion to dismiss under Rule 12(b)(6)." *Maheu v. Bank of Am., N.A.*, No. 12-CV-508, 2012 WL 1744536, at *4 (D. Md. May 14, 2012) (citing *German v. Fox,* 267 F. App'x 231, 233 (4th Cir. 2008)). To overcome a Rule 12(b)(6) motion, a complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In evaluating the sufficiency of the Plaintiffs' claims, the Court accepts factual allegations in the Complaint as true and construes the factual allegations in the light most favorable to the Plaintiff. *See Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005). However, the Complaint must contain more than "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc.*, 591 F.3d

250, 255 (4th Cir. 2009). The court should not affirm a motion to dismiss for failure to state a claim for relief unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *GE Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 548 (4th Cir. 2001) (citing *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 249–50).

### B.  Summary Judgment

A party may also move for summary judgment under Fed. R. Civ. P. 56(a), identifying each claim or defense on which summary judgment is sought, at any time until 30 days after the close of all discovery. Fed. R. Civ. P. 56(a). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In undertaking this inquiry, the Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, this Court must also abide by its affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993).

### III.   ANALYSIS

### A.  TILA Claims

The Truth in Lending Act serves to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to [her] and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair

credit billing and credit card practices." 15 U.S.C. § 1601. In this suit, Plaintiff alleges that Defendants failed to notify Plaintiff that ownership of the Loan had been transferred to Fannie Mae in violation of 15 U.S.C. § 1641(g)(1), sent Plaintiff an inaccurate payoff statement in violation of § 1639(t), and failed to timely transmit periodic mortgage statements in violation of § 1638(f) of the Truth in Lending Act. The Court will address those contentions in turn.

### i. 1641(g)

15 U.S.C. § 1641(g) provides that "not later than 30 days after the date on which a mortgage loan is sold or otherwise transferred or assigned to a third party, the creditor that is the new owner or assignee of the debt shall notify the borrower in writing of such transfer." 15 U.S.C. § 1641(g). Here, Defendants assert that the disclosure requirements apply only to the transferring of the underlying debt, not to the assignment of the Deed of Trust. ECF No. 21-1 at 11–12. Therefore, Defendants argue, "her claim under 1641(g) is insufficiently plead and fails." *Id.* at 12.

While Defendants are correct that the mere assignment or re-assignment of the Deed of Trust alone does not trigger the disclosure requirements of 1641(g), transferring the Note itself does. *See Barr v. Flagstar Bank, F.S.B.*, No. CIV.A. RDB-13-2654, 2014 WL 4660799, at *3–4 (D. Md. Sept. 17, 2014) ("The disclosure requirement of § 1641(g) applies when the new creditor acquires (via transfer, sale, assignment, or other means) the borrower's 'mortgage loan' or 'debt.'"). Thus, "if a plaintiff pleads sufficiently that both the security instrument *and* the note were transferred, then [her] § 1641(g) claim will survive a motion to dismiss on that ground." *Id.* (emphasis in original); *see also Schafer v. CitiMortgage, Inc.*, No. CV 11–03919 ODW (FFMx), 2011 WL 2437267, at *6 (C.D. Cal. June 15, 2011) (denying the defendants' motion to dismiss the § 1641(g) claim because the plaintiff alleged that the note and the deed of trust were assigned

on the same date to defendants); *Squires v. BAC Home Loans Servicing. LP.* No. 11–0413–WS–M, 2011 WL 5966948, at *3 (S.D. Ala. Nov. 29, 2011) (allowing plaintiffs' § 1641(g) claim to proceed because they alleged that both the note and the mortgage were assigned to the defendant).

Here, Plaintiff does not merely claim that the Deed of Trust was assigned to Fannie Mae, but also that the underlying debt was transferred and Fannie Mae was the new owner of her Loan. *See* ECF No. 17 at 11 ("Defendant FNMA violated TILA, 15 U.S.C. § 1641(g)(1) by failing to notify the Plaintiff that the ownership of the loan had been transferred to it."); ECF No. 17 ¶ 32 ("Seterus's disclosure that FNMA was the owner of the Note was the first date that Plaintiff was advised that FNMA was the owner of the Note."). Indeed, Fannie Mae has identified itself as the current owner of Plaintiff's Mortgage Loan, ECF No. 21-1 at 8, and it is undisputed in the pleadings that another entity previously owned the Loan. *See* ECF No. 17 at 2; ECF No. 21-5 at 2.

Defendant further argues that the most recent assignment of the Deed of Trust was made in 2012, and therefore any claim arising from such transfer is barred by the one-year statute of limitations under TILA. *See* 15 U.S.C. § 1640(e). In response, Plaintiff argues that her TILA claim is not barred by the one-year statute of limitations because the allegations in the Complaint unequivocally state that Defendants did not disclose Fannie Mae's ownership of the loan until March 2015, and that Defendants concealed this information from Plaintiff. ECF No. 25 at 2 n.1. The Court agrees that at this juncture, dismissal of Plaintiff's case on statute of limitations grounds would be improper. *See Ward v. Branch Banking & Trust Co.*, No. CIV.A. ELH-13-01968, 2014 WL 2707768, at *13 (D. Md. June 13, 2014) (declining to dismiss TILA claim on statute of limitations grounds where "plaintiff . . . alleged sufficient facts to receive the benefit of

equitable tolling"); *see also Roach v. Bank of Am. Corp.*, No. 3:14-CV-703-J-39JBT, 2014 WL

7771740, at *2 (M.D. Fla. Dec. 9, 2014) (noting that "[d]ismissal on such grounds is appropriate

*only* if it is apparent from the face of the complaint that the claim is time-barred and *only* if it

appears beyond a doubt that [a plaintiff] can prove no set of facts that toll the statute.")

(emphases in original). Plaintiff has alleged that disclosure was first made in March 2015, and

that Defendants otherwise concealed this information from her prior to that date. Taking the

allegations in the Complaint as true, the Court denies Defendants' Motion to Dismiss this claim.

### ii.   1639(t)

Under 15 U.S.C. § 1639(t)(2), "[p]ayoff balances shall be provided within 5 business

days after receiving a request by a consumer or a person authorized by the consumer to obtain

such information." 15 U.S.C. § 1639(t)(2). 12 C.F.R. § 226.36 ("Regulation Z") further requires

lenders "to provide, within a reasonable time after receiving a request from the consumer or any

person acting on behalf of the consumer, an accurate statement of the total outstanding balance

that would be required to satisfy the consumer's obligation in full as of a specified date." 12

C.F.R. § 226.36(c)(1)(iii). "This regulation thus essentially requires servicers [of home mortgage

loans] to tell borrowers the account balance, or payoff amount, when asked." *Aghazu v. Severn

Sav. Bank*, No. PJM 15-1529, 2016 WL 808823, at *5 (D. Md. Mar. 2, 2016) (citing *Boardley v.

Household Finance Corp. III*, 39 F. Supp. 3d 689, 698 (D. Md. 2014)).

Here, Defendants argue that Plaintiff did not allege she was improperly charged a fee or

that her mortgage was "a high-cost mortgage," warranting dismissal of her claims as a matter of

law. As Plaintiff correctly points out, however, she is not required to allege an improper fee or a

high-cost mortgage to bring a claim under this subsection. *See Aghazu*, 2016 WL 808823, at *5

(noting that "[a] mortgage loan servicer's failure to provide accurate payoff figures when asked

9

may . . . provide the basis of a TILA claim by a mortgage loan consumer."); *Lucien v. Fed. Nat.*

*Mortg. Ass'n*, 21 F. Supp. 3d 1379, 1384 (S.D. Fla. 2014) (noting that "§ 1639 does not have a

blanket provision stating that it applies only to high-cost mortgages" and declining to dismiss

plaintiff's claim on this basis). Hence, Defendants' Motion to Dismiss this claim is denied.

### iii.   1638(f)

Plaintiff's final TILA claim relates to Defendants' alleged failure to transmit periodic

mortgage statements. 15 U.S.C. § 1638(f) provides that:

> The creditor, assignee, or servicer with respect to any residential
> mortgage loan shall transmit to the obligor, for each billing cycle, a
> statement setting forth each of the following items, to the extent
> applicable, in a conspicuous and prominent manner:
>
> (A) The amount of the principal obligation under the mortgage.
> (B) The current interest rate in effect for the loan.
> (C) The date on which the interest rate may next reset or adjust.
> (D) The amount of any prepayment fee to be charged, if any.
> (E) A description of any late payment fees.

15 U.S.C. § 1638(f)(1). Here, Defendant argues that "Plaintiff was provided with sufficient

account documentation to identify interest and other costs and fees accruing on the Mortgage

Account." ECF No. 21-1 at 8–9. Defendant further argues that Plaintiff has failed to show

"detrimental reliance" and "actual damages." *Id.* at 9. In response, Plaintiff points to several

allegations in the Complaint demonstrating that Defendants failed to transmit periodic mortgage

statements to her, and indicating that when she did receive mortgage statements, they did not

provide the "statutorily required information," such as the amount of interest assessed on the

account and certain late payment fees. ECF No. 25 at 4–6 (citing ECF No. 17). Plaintiff further

contends that she detrimentally relied on Defendants to provide the statutorily required

information because if she had received the mortgage statements, "Plaintiff would have know[n]

that Seterus is charging interest, fees, and costs and the Plaintiff would have paid or challenge[d]

those assessments and precluded any interest, fees, or costs resulting from late payments." ECF No. 17 ¶ 73. Plaintiff also asserts that she sustained damages because she "did not have mortgage statements to provide the private lender," so she was "unable to obtain the personal loan to cure the default." *Id.* ¶ 71. The Court agrees that Plaintiff has alleged evidence sufficient to state a claim, and Defendant's Motion to Dismiss is thus denied.

### B.  RESPA Claims

Plaintiff next claims Defendants failed to provide notice that they had received her qualified written requests ("QWRs"), failed to investigate her inquiries within 30 days, failed to respond within seven days of her disputing the accuracy of the payoff statement, and continued to provide information to credit reporting agencies regarding delinquency of payments during the sixty day period following receipt of the QWRs — all in violation of 12 U.S.C. § 2605(e) of the Real Estate Settlement Procedures Act.

#### i.  Duty to Respond

12 U.S.C. § 2605(e) imposes a duty on loan servicers to respond to borrower inquiries and take certain actions with respect to such inquiries. Borrower inquiries triggering these duties are known as "qualified written requests" or QWRs:

> [A] qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that—
>
> (i)  includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>
> (ii)  includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). The statute provides a duty to respond to QWRs:

> If any servicer of a federally related mortgage loan receives a
> qualified written request from the borrower (or an agent of the
> borrower) for information relating to the servicing of such loan, the
> servicer shall provide a written response acknowledging receipt of
> the correspondence within 5 days (excluding legal public holidays,
> Saturdays, and Sundays) unless the action requested is taken within
> such period.

12 U.S.C. § 2605(e)(1)(A). The statute also requires the servicer to take certain actions within 30

days of receiving the QWRs. Specifically, the servicer shall make appropriate corrections to the

borrower's account as needed, or conduct an investigation and provide the borrower with a

written explanation or clarification of the servicer's decision. *See* 12 U.S.C. § 2605(e)(2).

Here, Plaintiff claims that Defendants failed to provide notice that it had received her

QWRs on at least four occasions. *See* ECF No. 17 ¶ 79; ECF No. 17 ¶¶ 16, 22, 33, 58. Plaintiff

also claims that Defendant failed to "take appropriate action, including conducting a reasonable

investigation of Plaintiff's inquiries." *Id.* ¶ 81. Defendants' arguments in its Motion to Dismiss

hinge on whether Plaintiff's requests constituted a "QWR" for purposes of RESPA. Defendants

state that "the permissible scope of Qualified Written Requests under RESPA is limited to

information related to the servicing of loans," and "courts have drawn a distinction between

communications related to the servicing of the loan, which are covered under RESPA, and those

challenging the validity of the loan, which are not." ECF No. 21-1 at 15 (citing *Dides v. Ocwen

Loan Servicing, LLC*, No. WMN-12-2989, 2013 WL 2285371, at *2 (D. Md. May 21, 2013);

*Minson v. CitiMortgage, Inc.*, No. DKC-12-2233, 2013 WL 2383658, at *4 (D. Md. May 29,

2013)).

Plaintiff counters in her Opposition that the cases Defendants rely upon were decided

before the 2013 RESPA Servicing Rule went into effect, and that after January 10, 2014, "a

servicer shall comply with the requirements of this section for any written request for

information from a borrower that includes the name of the borrower . . . and states the information the borrower is requesting with respect to the borrower's mortgage loan." ECF No. 25 at 7 (citing 12 C.F.R. § 1024.36(a)). Plaintiff further argues that she "not only requested information regarding the original Note [in her letters], but the Plaintiff disputed or challenged the interest, fees, attorney fees, foreclosure costs and delinquency status of the account" and "the portion of Plaintiff's letters that disputed the assessed interest payments, fees, costs, and delinquency status did relate to servicing and thus the letters qualified as QWRs." ECF No. 25 at 8 (citing ECF No. 17 ¶¶ 15, 21, and 27). The Court agrees that on the facts presented in the Complaint, Plaintiff's requests fit the definition of qualified written requests under 12 U.S.C. § 2605(e)(1)(B). Additionally, Plaintiff has adequately pled damages to the extent that she was unable to obtain a loan and lease the Property, ECF No. 17 ¶¶ 12–15, was assessed interest, fees, and other charges, *id.* ¶¶ 30, 35, 54, and spent time and money preparing and sending letters to Defendants. *See Cezair v. JPMorgan Chase Bank, N.A.*, No. CIV.A. DKC 13-2928, 2014 WL 4295048, at *8 (D. Md. Aug. 29, 2014) (noting that "[s]uch losses can constitute recoverable damages"). Hence, Plaintiff has stated a claim under RESPA.

### ii.  Reporting Plaintiff as Delinquent

Additionally, 12 U.S.C. § 2605(e) provides for a grace period protecting a borrower's credit rating after a servicer receives a QWR:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency.

12 U.S.C. § 2605(e)(3). Plaintiff claims that Defendants violated this provision by "providing information to credit reporting agencies regarding delinquent and/or overdue payments owed by

Plaintiff during the sixty (60) day period following Seterus' receipt of Plaintiff's 'qualified written requests.'" ECF No. 17 ¶ 84. Defendants' argument on this point once again relates to whether Plaintiff's requests qualified as QWRs. As the Court has already determined that Plaintiff's requests did qualify as QWRs, Defendants' Motion to Dismiss Plaintiffs' claim pursuant to 12 U.S.C. § 2605(e) is denied.

### iii. Plaintiff's Motion for Summary Judgment

Plaintiff has further moved for summary judgment on her RESPA claims, stating in conclusory fashion that "there is no dispute that Plaintiff submitted valid QWRs and Seterus reported inaccurate information." ECF No. 25 at 15. However, as Defendants note, Plaintiff does not "cit[e] to particular parts of materials in the record" or "show[] that the materials cited do not establish the . . . presence of a genuine dispute," as required by Fed. R. Civ. P. 56(c)(1). Indeed, because the majority of Plaintiff's claims hinge on her written inquiries to Defendants and Defendants' responses, which have not yet been attached to the record, summary judgment at this juncture would be inappropriate. Plaintiff's Motion for Summary Judgment on her RESPA claims is therefore denied.

### C. MCDCA Claims

The Maryland Consumer Debt Collection Act provides that "in collecting or attempting to collect an alleged debt," a collector may not engage in various activities, including "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code, Com. Law § 14–202(8). Thus, to plead a claim under the MCDCA, "Plaintiff must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so." *Pruitt v. Alba Law Grp., P.A.*,

No. CIV.A. DKC 15-0458, 2015 WL 5032014, at *3 (D. Md. Aug. 24, 2015). "The key to prevailing on a claim of MCDCA is to demonstrate that the defendant 'acted with knowledge as to the *invalidity* of the debt.'" *Id.* (citing *Pugh v. Corelogic Credco, LLC*, No. DKC 13–1602, 2013 WL 5655705, at *4 (D. Md. Oct.16, 2013)).

Here, Plaintiff argues that Defendants "attempt[ed] to collect foreclosure costs and attorney fees it had no legal right to collect" and attempted to prematurely conduct a foreclosure sale. ECF No. 17 at 14. In response, Defendant counters that because "[i]t is undisputed that Plaintiff defaulted on her mortgage loan," Defendant "had the legal right to foreclose." ECF No. 21-1 at 17–18. (citing *Pac. Mortg. & Inv. Group, Ltd. v. LaGuerre*, 81 Md. App. 28, 40–41 (1989) ("In Maryland, the right to initiate foreclosure proceedings typically arises upon the borrower's default.")). Defendants' argument misapprehends Plaintiff's claim. Plaintiff's MCDCA claim is not predicated on whether Defendants had the right to foreclose, but rather, on whether Defendants attempted to collect an amount of debt they knew they had no right to collect. Here, Plaintiff alleges in her Complaint that:

> 90. Seterus knew the Plaintiff had not been served with foreclosure action prior to February 14, 2015 and that it must allow the Plaintiff up to twenty-five days to request mediation from date Plaintiff was served with the foreclosure action if an application for mediation was included in the documents accompanying the foreclosure action. Accordingly, Plaintiff had at least until March 11, 2015 to request mediation. Therefore, Seterus had no right to conduct a foreclosure sale and thereby incur foreclosure sale costs by March 6, 2015.

> 91. Seterus knows that it did not provide Plaintiff with an application for mediation when it served the foreclosure action. In fact Seterus did not file its final loss mitigation and serve Plaintiff with an application for mediation until July 27, 2015.

ECF No. 17 ¶¶ 90, 91. Plaintiff also states that Defendants FNMA and Seterus assessed excessive and inflated charges to Plaintiff's accounts:

> More particularly, the Defendants charged an inflated amount for
> title fees ($225), process server ($95), filing costs ($445) and
> attorney fees ($1,500). Based on Plaintiff's research, the customary
> charges for the foregoing fees are $100 for title fees, $40 to $80 for
> process server, $175 for filing costs, and $800 or less for attorney
> fees.

ECF No. 17 ¶ 54. Thus, Plaintiff has set forth sufficient allegations tending to establish that

Defendants did not possess the right to collect the amount of debt sought and attempted to collect

the debt knowing that they lacked the right to do so. Accordingly, dismissal of this claim is not

appropriate.

### D. MCPA Claims

Section § 13-316(c)(2) of the Maryland Consumer Protection Act provides that a

mortgage loan servicer "shall respond in writing to each written complaint or inquiry within 15

days if requested." Md. Code, Com. Law § 13-316(c)(2). Plaintiff claims that "Defendant Seterus

violated MCPA § 13-316(c) by failing to respond within 15 days." ECF No. 17 ¶ 97. Defendants

counter that Plaintiff did not clearly request a response in her correspondence, and thus,

Defendants had no duty to respond. ECF No. 21-1 at 19 (citing *Trionfo v. Bank of Am., N.A.*, No.

CIV. JFM-15-925, 2015 WL 5165415, at *7 (D. Md. Sept. 2, 2015) ("A plain reading of the

statute indicates that a mortgagor must request a response in order to trigger the servicer's duty

to provide one.")).

Based upon a careful review of Plaintiff's nine written inquiries as alleged in the

Complaint, however, at least seven inquiries referenced a request for information. ECF No. 17 ¶¶

15, 27, 30, 47, 50, 57, 63. Nevertheless, it appears that of those seven inquiries, only the

November 28, 2015 letter was not responded to in a timely fashion under § 13-316(c)(2). *Id.* ¶¶

57–58 ("Seterus did not acknowledge Plaintiff's letter dated November 28, 2015, much less did

Seterus provide a response to the letter."). Plaintiff alleges that these failures to respond "resulted

in the continual assessment of accruing interest, fees and costs on the mortgage account, and stress in her attempts to obtain the information by other means" and "caused the Plaintiff to endure damages including stress, physical sickness, headaches, sleep deprivation, worry, and pecuniary expenses." *Id.* ¶¶ 98, 100. Thus, while Defendants' Motion to Dismiss Plaintiff's MCPA claims must be granted with respect to the remainder of Plaintiff's written inquiries, it is denied with respect to Plaintiff's Eighth Letter dated November 28, 2015 specifically. Plaintiff has stated a claim that Defendants did not comply with § 13-316(c)(2) in regards to this particular letter.

### E.  FCRA Claims

Finally, Plaintiff alleges that Defendant violated 15 U.S.C. § 1681s-2 by "failing to delete or modify the accounts after it concluded a reasonable investigation of Plaintiff's dispute" and "failing to note Plaintiff's continuing dispute." ECF No. 17 ¶¶ 102–103. 15 U.S.C. § 1681s-2 prescribes responsibilities for furnishers of information to credit reporting agencies ("CRAs"), as Defendant Seterus was to credit reporting agencies Equifax, Experian, and Trans Union. The statute provides that after receiving notice of a dispute "with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency," the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that

compile and maintain files on consumers on a nationwide basis; and

(E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--

(i) modify that item of information;

(ii) delete that item of information; or

(iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). Defendant argues that Plaintiff's FCRA claim fails because she did not allege that "the consumer reporting agency notified the defendant furnisher of the dispute," she did "not allege that Seterus failed to conduct an investigation into her dispute or that such investigation was unreasonable," and because Plaintiff conceded "she was in default of her payment obligations." ECF No. 21-2 at 21–22.

In response, Plaintiff contends that "[o]n a motion to dismiss, and prior to discovery, the foregoing allegations are sufficient to state a 1681s-2(b) claim." ECF No. 25 at 12 (citing *Wang v. Asset Acceptance LLC*, No. C 09-04797 SI, 2010 WL 2985503, at *5 (N.D. Cal. July 27, 2010) (finding Plaintiff adequately alleged FCRA claim and noted "[Defendant] Asset argues that [Plaintiff] Wang needs to allege additional facts about notice, including when Trans Union notified Asset of the dispute, but does not explain how Wang or similarly situated consumers would have access to those 'facts' without formal discovery."). The Court agrees. Indeed, other courts have found that a consumer in Plaintiff's position satisfies the pleading requirements of a 1681s-2(b) claim by alleging that she raised a dispute with the CRA, because it can reasonably be inferred that the CRA performed its statutory obligation and forwarded notice of the dispute to the furnisher. *See Cooper v. Green Tree Servicing, LLC*, No. 5:14-CV-1750, 2015 WL

5085770, at *4 (N.D. Ohio Aug. 27, 2015).[5] Moreover, it is clear from the Complaint that

Plaintiff notified Seterus directly of the disputes on her account, *see* ECF No. 17 ¶¶ 21, 27, 40,

50, 63, negating Defendants' arguments to the contrary.

Additionally, Defendants' arguments that Plaintiff was required to also plead that a

reasonable investigation was not conducted are also unavailing. "[T]he duties imposed upon

furnishers like [Defendant] under § 1681s–2(b) are independent and severable. [Plaintiff] need

not assert, for example, a failure to conduct a reasonable investigation as a predicate for alleging

a violation of § 1681s–2(b)." *Wang*, 2010 WL 2985503, at *5 (citing *Gorman v. Wolpoff &

Abramson, LLP*, 584 F.3d 1147, 1155–64 (9th Cir. 2009) (separately reviewing plaintiffs

allegations that a furnisher violated its duty to conduct a reasonable investigation and its duty to

accurately report a debt as disputed)). Plaintiff has met her burden here by alleging that

Defendants failed to report her account as disputed.

As to Defendants' final argument on this claim, the Fourth Circuit has held "a credit

report is not accurate under FCRA if it provides information in such a manner as to create a

materially misleading impression." *Saunders v. Branch Banking And Trust Co. of VA*, 526 F.3d

142, 148 (4th Cir. 2008). And "a consumer report that contains technically accurate information

may be deemed 'inaccurate' if the statement is presented in such a way that it creates a

misleading impression." *Id.* Defendants' cited cases to support the assertion that Plaintiff's

default barred her from bringing an FCRA claim are inapposite. In *Beattie v. Nations Credit Fin.

Servs. Corp.*, 69 F. App'x 585 (4th Cir. 2003) the plaintiffs did not dispute the accuracy of the

reports. In *Alston v. United Collections Bureau, Inc.*, No. CIV.A. DKC 13-0913, 2014 WL

859013, at *6 (D. Md. Mar. 4, 2014), the FCRA claim was dismissed at the summary judgment

---

[5] Plaintiff alleges in her Complaint that in addition to notifying Seterus about the disputes, she notified the CRAs directly about the disputes. ECF No. 17 ¶¶ 39, 46.

stage, because the plaintiff had not adduced sufficient evidence to create a genuine dispute of material fact in light of evidence provided by defendant that it had performed a reasonable investigation. This case has not yet reached that stage. Here, Plaintiff disputes the accuracy of the reporting and has adequately pleaded that Defendants violated 1681s-2(b) by failing to notate that her debt was disputed. Indeed, such a decision to report the debt without mention of a dispute could be "misleading in such a way to such an extent that it can be expected to have an adverse impact." *Saunders*, 526 F.3d at 150. Defendants' Motion to Dismiss Plaintiff's FCRA claim is denied.

### i. Plaintiff's Motion for Summary Judgment

As with her RESPA claims, Plaintiff also moves for summary judgment on her FCRA claims. ECF No. 15 at 15. However, again, Plaintiff has not met her burden of establishing that no genuine issue of material exists with respect to her FCRA claims. *See Johnson v. United States*, 861 F. Supp. 2d 629, 634 (D. Md. 2012) (noting that "it is the parties' obligation, and not the Court's, to locate and cite to the appropriate portions of the record that support arguments on summary judgment.") (internal alterations omitted). Plaintiff merely asserts that "there is no dispute that Plaintiff submitted credit disputes to Seterus, that the CRAs forwarded notice of the dispute to Seterus, and Seterus failed to report the account as disputed." ECF No. 15 at 15. Without discovery, however, the record does not yet demonstrate the factual underpinnings of the Defendants' reporting to the credit reporting agencies. Plaintiff's cross motion for summary judgment on her FCRA claims is denied.

20

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, ECF No. 21, is denied, in part, and granted, in part. The Motion to Dismiss is denied in all respects, except Plaintiff's claims under the MCPA are dismissed with the qualifications described above. Plaintiff's Cross Motion for Summary Judgment, ECF No. 25, is denied. A separate Order shall issue.

Date: February 13, 2017

George J. Hazel
United States District Judge